IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND
ALLIED TRADES INDUSTRY
PENSION FUND, as and for its Board
of Trustees and the International Painters
and Allied Trades Industry Pension Plan,
*et al.*,

     *Plaintiffs*,

       v.

HESS GLASS COMPANY, *et al.*,

     *Defendants*.

\*      
\*
\*
\*
\*
\*
\*
\*
\*

Civil Action No. RDB-21-2162

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs International Painters and Allied Trades Industry Pension Fund ("the Fund") and Tim D. Maitland, the administrator of the Fund, have filed a series of cases in this Court for unpaid withdrawal liability payments under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1381.[1] In this case, the Fund and Maitland have sued Hess Glass Company, Hess Glass & Maintenance, LLC, and HG Commercial Realty, LLC. Hess Glass Company was party to a collective bargaining agreement with unions covered by the Fund, but Hess Glass Company is now defunct and was dissolved in 2013. The Fund and Maitland contend that Defendants Hess Glass & Maintenance, LLC and HG Commercial Realty, LLC are successors to Defendant Hess Glass Company. Therefore, the

---

[1] Plaintiffs have filed at least 52 cases in this District since January 1, 2019. *See, e.g.*, *Int'l Painters and Allied Trades Indus. Pension Fund v. I. Losch Inc.*, No. BPG-19-3492, 2022 WL 4386232 (D. Md. Sept. 22, 2022); *Int'l Painters & Allied Trades Indus. Pension Fund v. Finch Indus. Coatings LLC*, No. ELH-18-2333, 2019 WL 6044197 (D. Md. Nov. 15, 2019); *Int'l Painters & Allied Trades Indus. Pension Fund v. Architectural Metal & Glass Sols. Ltd. Liab. Co.*, No. DKC 18-3656, 2020 WL 3577410 (D. Md. July 1, 2020).

Fund and Maitland assert that Hess Glass & Maintenance and HG Commercial Realty are liable to the Fund for unpaid withdrawal liability payments.

Cross motions for summary judgment have been filed. (ECF Nos. 25, 27.) At dispute is whether the facts of this case establish successor liability as alleged by the Fund and whether the action is barred by the statute of limitations and laches as alleged by the Defendants. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Defendants' Motion for Summary Judgment (ECF No. 25) is DENIED; and Plaintiffs' Cross Motion for Summary Judgment (ECF No. 27) is DENIED.

## BACKGROUND

Plaintiff International Painters and Allied Trades Industry Pension Fund is a defined benefit multiemployer pension fund established under 29 U.S.C. § 186(c)(5). (ECF No. 1 at 2.) Plaintiff Tim D. Maitland is the Administrator of the Fund who is charged with the responsibility for collection of withdrawal liability for the Pension Plan by the Trustees of the Pension Fund. (*Id.*)

Hess Glass Company was a Michigan corporation that performed glasswork and glazing services. (ECF No. 27-1 at 8–9.) It ceased all business operations in 2010 and was dissolved by the State of Michigan in 2013 for failure to file annual reports after 2010. (ECF No. 25 at 4.) Hess Glass & Maintenance, LLC and HG Commercial Realty, LLC are two Michigan limited liability companies. (ECF No. 1 at 3.) Together, they purchased assets and liabilities of Hess Glass Company when it went out of business. (ECF No. 27-1 at 9.)

2

Whereas Hess Glass Company employed unionized workers and therefore was subject to a collective bargaining agreement ("CBA"), Hess Glass & Maintenance and HG Commercial Realty are not parties to the CBA and do not employ unionized workers. (ECF No. 25 at 4.) Pursuant to the CBA, Hess Glass Company was required to make contributions to the Fund. (ECF No. 27-1 at 10.) Hess Glass Company ceased contributions to the Fund in 2010. (ECF No. 1 at 3.)

In June of 2010, counsel for Hess Glass Company asked the Fund for an estimate of withdrawal liability for Hess Glass Company. (ECF 21-1 at 13.) The Fund responded in early July 2010 with an estimated liability of $302,712. (ECF No. 1 at 4.)

The Fund demanded payment of withdrawal liability in the amount of $338,174 on June 12, 2020 from Hess Glass Company and Hess Glass & Maintenance. (ECF No. 27-1 at 16.) Under this Notice and Demand, the first payment was due on or before August 21, 2020, and subsequent payments were due on the first day of each subsequent month. (*Id.* at 16–17.) It is alleged that no payments were made. (*Id.* at 17.) On May 11, 2021, the Fund sent a 60-day cure notice to Hess Glass & Maintenance requesting that Hess Glass & Maintenance cure its deficiency in withdrawal liability payments within 60 days. (*Id.*) Hess Glass & Maintenance did not make a payment and instead emailed the Fund stating that there is no relationship between Hess Glass Company and Hess Glass & Maintenance. (*Id.*)

The Fund and Tim Maitland filed suit in this Court on August 23, 2021, bringing six counts against Defendants Hess Glass Company, Hess Glass & Maintenance, and HG Commercial Realty based on the Defendants' alleged failure to make withdrawal liability

payments, claiming that Hess Glass & Maintenance and HG Commercial Realty are successors to Hess Glass Company. (ECF No. 1.) Defendants filed a motion for Summary Judgment (ECF No. 25), arguing that Hess Glass & Maintenance and HG Commercial Realty are not party to the CBA and are not successors to Hess Glass Company. Defendants also assert that Plaintiffs' claims are barred by laches and the six-year statute of limitations in 29 U.S.C. § 1651(f). (ECF No. 25 at 6.) Plaintiffs filed a cross motion for Summary Judgment (ECF No. 27), controverting Defendants' denial of successor liability and asserting that Defendants waived all defenses to the imposition of withdrawal liability by their failure to demand arbitration under the mandatory arbitration procedures of the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381–1453.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial

courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866–68 (2014).

When both parties file motions for summary judgment, as here, this Court applies the same standard of review to both motions, considering "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. North Carolina Dept. of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)). "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir.

2016) (citation omitted); *see also Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they 'may be probative of the non-existence of a factual dispute.'" *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)); *Georgia State Conference of NAACP v. Fayette County Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015).

## ANALYSIS

### I.    Successor Liability

This Court's analysis of the cross motions for summary judgment relies on the doctrine of successor liability, which has not been analyzed in this Circuit in the MPPAA withdrawal liability context.[2] In analogous contexts this Circuit has used the federal common law standard for successor liability. *See Equal Rts. Ctr. v. Equity Residential*, No. CCB-06-1060, 2016 WL 1258418, at *5 (D. Md. Mar. 31, 2016) (citing *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir. 1992)). Other Circuits have developed a body of case law applying the successorship doctrine to the MPPAA withdrawal liability context. *See, e.g.*, *Tsareff v. ManWeb Servs., Inc. (ManWeb I)*, 794 F.3d 841 (7th Cir. 2015); *Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079 (9th Cir. 2015). "Successor liability may be imposed to prevent other employers from having to make up the

---

[2] Although Plaintiffs originally raised claims concerning common control and alter ego liability (ECF No. 1 at 10), these claims have since been abandoned. (ECF No. 32 at 5.)

difference left by employers who have left the fund without paying their liabilities but whose businesses continue." *Indiana Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc. (ManWeb II)*, 884 F.3d 770, 776 (7th Cir. 2018). The test for successor liability is designed to balance "the well-articulated federal interest in ensuring that employers maintain properly funded pension plans and the social interest in facilitating the market in corporate and other productive assets." *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1325 (7th Cir. 1990).

Successor liability "applies when 'an employer . . . substantially assumes a predecessor's assets, continues the predecessor's operations without interruption or substantial change, and . . . has notice . . . at the time of acquisition.'" *ManWeb II*, 884 F.3d at 776 (quoting *Artistic Furniture*, 920 F.2d at 1326). The potential for successor liability depends heavily on the nature of the relationship between the businesses in question. *ManWeb II*, 884 F.3d 776. "[I]n light of . . . the myriad factual circumstances and legal contexts in which [the employment law successorship issue] can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." *Resilient Floor*, 801 F.3d at 1091 (second and third alterations in original) (quoting *Howard Johnson Co. v. Detroit Loc. Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 256 (1974)).

In this case, the question of successor liability depends on the character of the relationship between Hess Glass Company with Hess Glass & Maintenance and HG Commercial Realty. First, successor liability depends on the continuity of the business

operations of Hess Glass Company with Hess Glass & Maintenance and HG Commercial Realty. Second, successor liability depends on whether Hess Glass & Maintenance and HG Commercial Realty had notice of Hess Glass Company's withdrawal liability.

### A. Continuity

"[C]ourts consider the totality of the circumstances to determine continuity, focusing on the particulars of the case and the nature of the liability at issue." *ManWeb II*, 884 F.3d at 777. Continuity can be assessed in numerous categories, including ownership, physical assets, intangible assets, management and workforce, business services, and customers. *Id.* at 778.

#### 1. Ownership

Plaintiffs concede that there was no continuity of ownership. (ECF No. 32 at 13.)

#### 2. Physical Assets

Physical assets include vehicles, tools, and office equipment. *ManWeb II*, 884 F.3d at 779. Hess Glass & Maintenance uses the same business location and telephone number as Hess Glass Company. (ECF No. 29 at 9.) Additionally, Hess Glass & Maintenance purchased equipment and vehicles from Hess Glass Company. (ECF No. 27-3 at 27, 30.)

#### 3. Intangible Assets

Key elements of intangible assets include "name, goodwill, trademarks, supplier and customer data, trade secrets, telephone numbers and websites." *ManWeb II*, 884 F.3d at 774. Hess Glass & Maintenance uses the same first two words of Hess Glass Company's name. (ECF No. 29 at 10.) Hess Glass & Maintenance also uses a logo that features some similarities to the Hess Glass Company logo. (ECF No. 32 at 9.) Plaintiffs contend that the

logos are "substantially similar." (ECF No. 32 at 10.) Defendants argue that the Hess Glass & Maintenance logo is neither a "copy" nor a "variation" of Hess Glass Company's logo. (ECF No. 29 at 10.)

### 4. Management and Workforce

Hess Glass & Maintenance has had 18 employees since the sale of Hess Glass Company in 2010. (ECF No. 32 at 11.) Defendants argue that of those 18, five previously worked for Hess Glass Company. (ECF No. 29 at 11.) Plaintiffs, conversely, argue that six of them worked for Hess Glass Company. (ECF No. 32 at 11.) According to John Metro, a former Hess Glass Company employee and current co-owner of Hess Glass & Maintenance and HG Commercial Realty, at the time of the sale, Hess Glass Company had three employees: himself, Patricia Hayes, and Jason Rutherford. (ECF No. 27-3 at 54.) These three became co-owners of Hess Glass & Maintenance following the sale. (*Id.* at 11.) Hess Glass Company's owner, Russell Rutherford, became employed as a consultant to Hess Glass & Maintenance for a 48-month period following the sale of Hess Glass Company. (*Id.* at 35.)

### 5. Business Services

Plaintiffs and Defendants dispute the nature of Hess Glass Company's work as compared to Hess Glass & Maintenance's work. (ECF No. 29 at 8.) According to Mr. Metro, Hess Glass Company "did union contract new construction." (ECF No. 27-3 at 70.) Conversely, according to Mr. Metro, Hess Glass and Maintenance does "service, repairs, remodels . . . not . . . any union work . . . ." (*Id.*) Mr. Metro stated that in the four years

leading up to the sale of Hess Glass Company, Hess Glass Company "[h]ad no contract union work going. [They] were doing service work, repair work, glass replacement." (*Id.*)

Plaintiffs argue that Hess Glass & Maintenance performs the same type of work that Hess Glass Company performed at the time of the asset sale. (ECF No. 32 at 8.) Defendants, conversely, argue that Hess Glass & Maintenance's business services amount exclusively to repair work, not construction work. (ECF No. 29 at 8–9.) Defendants also contend that Hess Glass Company's business model was premised on new construction work. (*Id.* at 9.)

### 6. Customers

Two of the customers on the list of Hess Glass & Maintenance and HG Commercial Realty's customers were previously customers of Hess Glass Company. (ECF No. 29 at 11.)

In sum, the parties dispute Hess Glass & Maintenance and HG Commercial Realty's successorship to Hess Glass Company because of disagreements regarding the nature and extent of similarities in the companies' logos, management and workforce, and business services.

### B. Notice

"Notice can be proven not only by pointing to the facts that conclusively demonstrate actual knowledge, but also by presenting evidence that allows the fact finder to imply knowledge from the circumstances." *ManWeb I*, 794 F.3d at 847.

In his deposition testimony, John Metro stated that he did not know that his attorney had asked the pension fund for a rough calculation of the potential withdrawal liability of

Hess Glass Company. (ECF No. 27-3 at 69.) Mr. Metro stated that he was aware of the possibility of withdrawal liability at the time of the execution of the asset sale agreement. (*Id.* at 66.) Similarly, Mr. Metro's co-owner Patricia Hayes, also a former employee of Hess Glass Company, stated in her deposition that she was not aware that her attorney had requested an estimate of the withdrawal liability on July 1, 2020, never saw the amounts of liability, and knew that withdrawal liability was addressed in the asset agreement without any further knowledge of how much the withdrawal liability could be. (ECF No. 27-4 at 34–35.)

The parties dispute whether this constitutes sufficient notice under the MPPAA. Plaintiffs assert that the deposition testimony of Mr. Metro and Ms. Hayes, along with the inclusion of a liability waiver in the asset purchase agreement and the buyers' previous membership in a union, presents evidence of actual and, at the very least, constructive notice. (ECF No. 27-1 at 38.) Defendants, conversely, claim that whatever Mr. Metro, Ms. Hayes, and their co-owner Jason Rutherford were aware of, it was not sufficient to constitute constructive notice. (ECF No. 29 at 12.)

In sum, genuine disputes of material fact remain regarding both the continuity and notice necessary for successor liability. Accordingly, the plaintiffs' motion for summary judgment (ECF No. 27) is DENIED.

## II.    Statute of Limitations and Laches

"An action for withdrawal liability payments may not be brought after the longer of either '(1) 6 years after the date on which the cause of action arose, or (2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the

existence of such cause of action.'" *Int'l Painters & Allied Trades Indus. Pension Fund v. I. Losch Inc.*, No. BPG-19-3492, 2022 WL 4386232, at *3 (D. Md. Sept. 22, 2022) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 198 (1997)). "[T]he statute of limitations does not begin to run on withdrawal liability until a scheduled payment is missed." *I. Losch*, 2022 WL 4386232, at *3 (quoting *Bay Area Laundry*, 522 U.S. at 195)).

"Under the MPPAA, the plan sponsor must notify the employer of the amount of liability and the schedule for payments, and demand payment in accordance with the schedule '[a]s soon as practicable' after the employer's withdrawal from the pension fund." *I. Losch*, 2022 WL 4386232, at *4 (alteration in original) (quoting 29 U.S.C. § 1399(b)(1)). The MPPAA further provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [Section 1399] . . . shall be resolved through arbitration." *I. Losch*, 2022 WL 4386232, at *4 (second alteration in original) (quoting 29 U.S.C. § 1401(a)(1)). Failure to initiate an arbitration proceeding necessitates payment in the amounts and according to the schedule set by the plan sponsor. *Id.* § 1401(b)(1).

Although the arbitration requirement is "not a jurisdictional bar" but rather a requirement to exhaust administrative remedies, it should nevertheless "be enforced except in exceptional circumstances." *I. Losch*, 2022 WL 4386232, at *4 (quoting *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Courtad Constr. Sys., Inc.*, 439 F. Supp. 2d 574, 579 (E.D. Va. 2006)). "Exceptions include 'those instances where (1) the dispute is a matter of

statutory construction; (2) the utilization of administrative procedures would cause irreparable injury; and (3) the resort to administrative procedures would be futile.'" *I. Losch*, 2022 WL 4386232, at *4 (quoting *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991)). The statutory construction exception requires more than mere questions of statutory interpretation alone. *Courtad Constr.*, 439 F. Supp. 2d at 579. Instead, for the statutory construction exception to apply, the employer must claim "that it did not *become* an employer for MPPAA purposes in time to acquire withdrawal liability" or assert "that it was *never* an MPPAA employer and thus is not subject to ERISA's dispute resolution procedures." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 122 (4th Cir. 1991) (emphasis in original).

In this case, Defendants claim that Hess Glass & Maintenance and HG Commercial Realty are not and were never employers within the scope of ERISA. (ECF No. 29 at 23.) This falls within the narrow exception to the arbitration requirement. *I. Losch*, 2022 WL 4386232, at *5 (citing *Asbestos Workers Local 24 Pension Fund v. NGL Insulation, Inc.*, 760 F. Supp. 2d 529, 538 (D. Md. 2010)).

The question of whether Plaintiffs satisfied the "as soon as practicable" requirement of the MPPAA depends upon whether Plaintiffs had notice of Hess Glass Company's withdrawal. The statute of limitations defense also depends on notice. Defendants assert that John Metro's testimony that Russell Rutherford, the owner of Hess Glass Company, received the demand for payment in 2010 started to run the clock for the statute of limitations. (ECF No. 25 at 15.) Because Plaintiffs' sole defense to this claim is that

Defendants waived this defense by failing to demand arbitration (ECF No. 32 at 18), the fact-intensive inquiry into Plaintiffs' notice remains in genuine dispute. Accordingly, the Defendants' motion for summary judgment (ECF No. 25) is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 25) is DENIED; and Plaintiffs' Cross Motion for Summary Judgment (ECF No. 27) is DENIED.

A separate Order follows.

Dated: September 11, 2023

/s/
_____
Richard D. Bennett
United States District Judge

14